

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Homer P. Rainey, President
The University of Texas
Austin, Texas

Dear Dr. Rainey:           Opinion No. 0-2846

Re: Whether or not the City Council
of Galveston and the Board of
Regents of the University of
Texas have the power to enter
into a contract abrogating the
existing lease contract between
the City and the University in
regard to the operation of John
Sealy Hospital, and to make a
new contract for the hospitali-
zation of indigent City patients.

          This will acknowledge receipt of your letter of
December 14, 1940, requesting an opinion from this depart-
ment, your letter being as follows:

"For many years The University of Texas and the City of
Galveston have been operating the John Sealy Hospital in
Galveston under a contract, a copy of which is enclosed.
In recent months we have been going through the process
of making some reorganizations in the administration of
the Medical Branch of the University and of the John
Sealy Hospital, which The University of Texas owns. In
these reorganizations we have come to the place where
the City of Galveston and the Regents of The University
of Texas desire to abrogate the present contract and
thus to return the John Sealy Hospital to the control
of The University of Texas. In other words, we desire
to return to the status quo ante by the mutual abrogation
of the present contract.

"Once this contract is abrogated we mutually desire then
to enter into a new contract with the City of Galveston
for the care of their indigent sick. It is proposed under

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

the new contract that the City of Galveston will pay to
The University of Texas the sum of $40,000 per year in
return for which The University of Texas will agree to
provide hospitalization for the indigent sick of the
City of Galveston. The city, through its health depart-
ment, will designate those that they regard as indigent.

"It is the desire of both the City of Galveston and the
Regents of The University of Texas to make this new ar-
rangement under present laws, if possible, and we are,
therefore, asking for an opinion of your department upon
the following questions:

        "1. Whether or not the City Council of the
City of Galveston and the Board of Regents have the
power to enter into a contract abrogating the existing
lease contract between the City and the University in
regard to the operation of the John Sealy Hospital.

        "2. Whether or not the Board of Regents
have power and authority to operate the John Sealy Hospital
in connection with the Medical School at Galveston.

        "3. Whether or not the Board of Regents have
the power to enter into a contract with the City of Gal-
veston to take care of the indigent patients of the City
who may be designated by the health officer of the City.

        "4. Whether or not an agreement on the part
of the City to pay the University $40,000 a year for an
indefinite period of time for the care and hospitaliza-
tion of indigent patients would create a debt against
the City which would be prohibited by the Constitution
of Texas.

        "5. In the event that present laws will not
permit us to make the new arrangement which I have out-
lined above, we would greatly appreciate it if your de-
partment would suggest to us the type of legislation
which we should have to ask the Legislature to pass in
order to enable us to make the new desired arrangement."

        We answer your questions categorically:

        1. The City Council of the City of Galveston

and the Board of Regents of the State University do have
the power to enter into an agreement or contract abrogat-
ing the existing lease contract between them in regard
to the operation of the John Sealy Hospital.

The City of Galveston at present is operating
the John Sealy Hospital under a long-time lease from the
University of Texas, the owner of the Hospital.

Irrespective of the question of the validity
of the lease by which the University of Texas let the
Hospital to the City of Galveston, (and we are not at
all implying that there was any vice in the transaction)
the parties mutually may abrogate the lease, and thus re-
store the status quo ante. The cancellation of the recip-
rocal covenants of the parties constitutes reciprocal con-
siderations for the new contract of abrogation.

2. Upon the execution of the contract or agree-
ment abrogating the present lease, the Hospital will be,
of course, restored to the University of Texas, and the
University will own and hold the same as of the original
estate. The Board of Regents of the University, there-
fore, will then have the power and authority to operate
the Hospital in connection with the Medical School at Gal-
veston, if such operation be necessary, or even incidental-
ly necessary, to the proper operation of the Medical School.

3. Upon general principles of corporate law, the
Board of Regents of the University would have the power to
enter into a contract with the City of Galveston to take
care of the indigent patients of the City, if the doing so
was reasonably necessary as an incident to the operation
of its Medical School at Galveston. The Board would not
have the authority or power, however, to make such a con-
tract with the City of Galveston except as an incident to
the Board's power to operate the Medical School. The
State University is operating a medical school, not a
public hospital.

4. Such an agreement on the part of the City,
including its promise to pay the University $40,000.00 a
year for an indefinite period of time for the care and

Honorable Homer P. Rainey - Page 4

hospitalization of indigent patients, would not create
a debt against the City which would be prohibited by
the Constitution of Texas, nor would it create a debt
at all for the simple reason that such a contract would
be voidable for indefiniteness of duration, and could be
terminated by either party at will.

Such an undertaking could be entered into by
the City only through contracts for one year at a time
to avoid the constitutional requirement for provision
for payment.

APPROVED JAN 2, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Ocie Speer
Assistant

OS-MR

APPROVED JAN 2, 1941

ATTORNEY GENERAL OF TEXAS